**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ADANA FINCH, RAMON FINCH, and COYA SHORTER, | |
| Plaintiffs, | Case No. 17-cv-8492 |
| v. | |
| HOUSING AUTHORITY OF COOK COUNTY, et al., | Judge John Robert Blakey |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Adana Finch, Ramon Finch,[1] and Coya Shorter, acting pro se, sued the Housing Authority of Cook County (HACC) and several of its employees, alleging disability discrimination in violation of Section 504 of the Rehabilitation Act, retaliation, and a denial of procedural due process. Defendants moved to dismiss for failure to state a claim. For the reasons explained below, this Court grants the motion.

**I.     The Complaint's Allegations**

Adana and her two children, Ramon and Shorter, previously lived in a three-bedroom apartment through a Section 8 housing voucher from the HACC. [34] at 8. This living arrangement allowed each person to have their own bedroom. *Id*. The exact timing remains unclear, but at some point in 2017 the HACC told Plaintiffs that they were no longer eligible to continue receiving a three-bedroom voucher due

---
[1] Because Plaintiffs Adana Finch and Ramon Finch share a last name, this Court refers to them by first name throughout this opinion.

1

to a decrease in funding. *Id*. Accordingly, the HACC switched Plaintiffs from a three-bedroom voucher to a two-bedroom voucher, meaning that Plaintiffs would have to move to a two-bedroom unit when their lease expired. *Id.*

Plaintiffs allege that the HACC did not apply its new voucher restrictions equally to all families, but rather targeted Plaintiffs for downsizing. [42] at 2, 6.[2] Specifically, Plaintiffs point to the situation of two other families living nearby: the Watson family and the Williams family. *Id*. The Watsons are a family of three, including one female adult, one minor female child, and one adult male with a learning disability; they live in a three-bedroom unit. *Id*. The Williams family, consisting of one female adult and one minor female child, resides in a two-bedroom unit. *Id*. The HACC allowed these families to remain in their current units after the policy change even though, Plaintiffs say, consistently applying the new policy would have required each family to receive vouchers for smaller units. *Id.*

In response to the new voucher policy, Adana requested a "reasonable accommodation" in May 2017. [34] at 8. Adana asked the HACC to continue providing her family with a three-bedroom housing voucher to accommodate Ramon and Shorter's disabilities. *Id*. Ramon suffers from asthma and has Autism Spectrum Disorder. [1] at 15.[3] Plaintiffs initially alleged Shorter's disability as

---

[2] Plaintiffs' response [42] raised new factual allegations not contained in their first amended complaint, and Adana argued these facts at a motion hearing on June 14, 2018. Given Plaintiffs' pro se status, this Court construed Adana's argument as an oral motion for leave to amend the complaint, and this Court granted that motion in open court on June 14. This background section thus incorporates allegations from Plaintiff's response.

[3] At Defendants' request, this Court takes judicial notice of the documents that Plaintiffs attached to their initial complaint because those documents are matters of public record. *See Henson v. CSC*

generally affecting her emotional and learning abilities, *id*. at 5, but allege in their response that Shorter was diagnosed with Bipolar II Disorder—which impairs her ability to care for herself—at some point after Plaintiffs moved to their current home in August 2017, [42] at 2. Adana presented medical documents in support of her request for a three-bedroom voucher to Defendant Jackie Hodges, who works as a disability coordinator for the HACC. *Id*. Hodges denied Adana's request in May 2017. *Id*.

In June 2017, Plaintiffs appealed Hodges' denial. [34] at 9. Defendant Candice Grimes, a paralegal for the HACC, denied Plaintiffs' appeal. *Id*. Plaintiffs filed another appeal to Grimes later in June; Grimes rejected that appeal without a hearing. *Id*.

In August 2017, Plaintiffs received a letter from Defendant Jon Duncan, the HACC's general counsel, advising them of their right to seek judicial review of the denial of accommodation within 35 days of the letter's date. *Id*. Plaintiffs do not specify when they received the letter—only that it came "too late to file the writ." [1] at 2. The letter's arrival was delayed because it was addressed to the wrong unit in Plaintiffs' building. [34] at 9. Plaintiffs allege that Duncan intentionally mailed the letter to the wrong address hoping they would never receive the letter and thus deprived them of the right to seek judicial review. *Id*. Adana believes that Duncan sent the letter to the wrong address in retaliation for claims she previously filed against the Housing Authority of Elgin and its employees. Duncan shares a last

---

*Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). Thus, this Court may properly consider those attachments on a motion to dismiss. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

name with an employee (or former employee) of the Elgin Housing Authority, but Plaintiffs do not allege any other connection between the organizations. *Id.*

In August 2017, Defendant LaTrice Gamble, a move specialist at the HACC, denied Plaintiffs' request to move into their new unit early a few days early. *Id.* at 9–10. Plaintiffs allege that this denial forced them to stay in a hotel for several days and cost them $600 in expenses, including spoiled food. [42] at 5. Plaintiffs further allege that their HACC caseworker, Defendant Cassy Williams, generally treated them unkindly and did not help them. [34] at 10.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

In evaluating a complaint on a Rule 12(b)(6) motion, this Court accepts all well-pled allegations as true and draws all reasonable inferences in Plaintiffs' favor.

4

*Iqbal*, 556 U.S. at 678. This Court does not, however, accept legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). On a motion to dismiss, this Court may consider the complaint itself, documents attached to the complaint, documents central to the complaint and to which the complaint refers, and information properly subject to judicial notice. *Williamson*, 714 F.3d at 436.

## III. Analysis

Plaintiffs claim that Defendants unlawfully discriminated against them in violation of § 504 of the Rehabilitation Act by denying their request for a three-bedroom voucher. Plaintiffs also claim that the HACC's denial of a three-bedroom voucher constituted retaliation against Adana for her previous case against the Elgin Housing Authority. Finally, Plaintiffs allege that Duncan intentionally violated their due-process rights by thwarting judicial review of the HACC's denial. This Court addresses each claim in turn.

### A. Disability Discrimination

Section 504 of the Rehabilitation Act prohibits programs receiving federal funds from discriminating on the basis of disability, including by improperly denying benefits to those with disabilities. 29 U.S.C. § 794(a). Although the pro se complaint does not specify whether Plaintiffs bring their § 504 claims against Hodges, Gamble, Williams, and Grimes in their personal or official capacities, at this stage this Court draws all reasonable inferences in Plaintiffs' favor. Thus, this Court addresses claims against Hodges, Gamble, Williams, and Grimes in both their personal and official capacities.

5

Defendants correctly argue that the Seventh Circuit does not recognize individual liability for employee-defendants in either their personal or official capacities under § 504. [39] at 5. Rather, the scope of liability extends only to defendants who "actually 'receive' federal financial assistance." *Grzan v. Charter Hosp.*, 104 F.3d 116, 120 (7th Cir. 1997). Employees of programs that receive federal funding "are not in themselves the recipients of such assistance" and so cannot face individual liability under § 504. *Id.* And any § 504 claims against employees in their official capacities fail where the plaintiff brings the same claim against the entity itself, because the official-capacity claims simply duplicate the claim against the entity. *See Stanek v. St. Charles Cmty. Unit Sch. Dist. #303*, 783 F.3d 634, 644 (7th Cir. 2015). Plaintiffs also assert a § 504 claim against the HACC, so this Court dismisses their § 504 claims against Hodges, Gamble, Williams, and Grimes.

To state a § 504 claim against the HACC, each plaintiff must allege that: (1) she is a disabled individual under the Act; (2) she is otherwise qualified for the benefit sought; (3) the HACC discriminated against her solely by reason of her disability; and (4) the HACC receives federal funding. *Grzan*, 104 F.3d at 119.

Taking the elements out of order, Plaintiffs adequately plead that the HACC receives federal funding because they allege that a reduction in federal funding led to the downsizing. *See* [42] at 4; [1] at 10 (letter from the HACC citing "insufficient funding" and "cost saving measures"). And this Court can reasonably infer that Plaintiffs were otherwise qualified to receive housing benefits from the HACC,

meaning that they met all of the HACC's program requirements despite any handicaps they have. *See Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 406 (1979). In housing, a qualified individual means someone "who meets the essential eligibility requirements for participation in, or receipt of benefits from, that program or activity," such as having an income below a certain level. 24 C.F.R. § 8.3. Plaintiffs allege that they received housing benefits from the HACC at the time their voucher eligibility changed, and they allege that the HACC never denied them benefits altogether. [34] at 8. Because Plaintiffs previously received housing benefits from the HACC, this Court reasonably infers that they were otherwise qualified to receive those benefits. *See Davis*, 442 U.S. at 406.

Plaintiffs must also show that they have, or are regarded as having, qualifying disabilities under the Rehabilitation Act. A qualifying disability means "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities include caring for oneself, performing manual tasks, speaking, learning, and working. *Id*. § 12102(2); *see also Stein v. Ashcroft*, 284 F.3d 721, 724–25 (7th Cir. 2002). Defendants argue that neither Adana nor Shorter satisfies this element. [39] at 9.

Plaintiffs fail to adequately plead that Adana herself has a qualifying disability. Plaintiffs' response refers to Adana's anxiety and alleges that Defendants' conduct forced her to seek treatment, [42] at 2, but Plaintiffs never allege that Adana's anxiety substantially limits one or more major life activities. Moreover, Plaintiffs allege only that Adana sought an accommodation from the

7

HACC for her children's disabilities, not for her own disability. *See* [34] at 8. Thus, this Court dismisses Adana's § 504 claim.

Plaintiffs similarly fail to plead that Shorter has a qualifying disability. The complaint concludes that Shorter needs her own bedroom because of her disability, but fails to allege any facts to support that conclusion. [34] at 8. Plaintiffs attached a physician's certification for Shorter to their initial complaint; the physician checked a box stating that Shorter "has a physical or mental impairment that limits one or more major life activities," but also wrote "none" in the section that asked for details about Shorter's particular limitations. [1] at 19–21. The Rehabilitation Act requires "specificity" and an "individualized inquiry into each plaintiff's condition" before determining that a plaintiff has a qualifying disability. *Branham v. Snow*, 392 F.3d 896, 903 (7th Cir. 2004). Thus, absent any supporting facts about which major life activities Shorter's alleged disability impairs and how the condition manifests itself, the bare allegation that she has a disability that impairs an unidentified major life activity does not suffice to state a claim.[4] *See id.; Scheerer v. Potter*, 443 F.3d 916, 919 (7th Cir. 2006) (explaining that courts must look "to the individual impairments" that a plaintiff suffers to determine if the plaintiff's disability qualifies under the Rehabilitation Act). Accordingly, this Court dismisses Shorter's § 504 claim.

---

[4] Plaintiffs' response alleges that Shorter was diagnosed with Bipolar II Disorder at some point after August 2017, and says that Shorter "cannot breath [sic] in small spaces" as a result. [42] at 2. That indicates that Shorter may have a disability that impairs the major life activity of breathing, but absent any additional facts showing how Shorter's disability manifested itself prior to being properly diagnosed, the HACC cannot face liability based upon that condition when the HACC denied Plaintiffs' request for a three-bedroom voucher in May 2017. Absent such facts, Plaintiffs fail to show any causal connection between Shorter's Bipolar II diagnosis in August 2017 and the HACC's housing decision that preceded the diagnosis by at least three months.

That leaves only Ramon's claim. Defendants do not contest that Ramon has a qualifying disability. *See generally* [39]. Ramon's physician certification indicates that his disabilities, including Autism Spectrum Disorder, affect his ability to care for himself. [1] at 23. Caring for oneself constitutes a major life activity. *See Stein*, 284 F.3d at 724.

To satisfy the final element of his § 504 claim, Ramon must also allege that the HACC discriminated against him by reason of his disability. *Grzan*, 104 F.3d at 119. Section 504 plaintiffs have three options for making this showing: (1) the defendant intentionally acted on the basis of disability; (2) the defendant refused to provide a reasonable accommodation; or (3) the defendant's policy disproportionately impacts disabled people. *Washington v. Ind. High Sch. Ath. Ass'n*, 181 F.3d 840, 847 (7th Cir. 1999). The law requires a causal connection between the plaintiff's disability and the discrimination, but only the first method of proof requires a showing of discriminatory animus. *See id.* at 846–49; *see also Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 562 (7th Cir. 2003) ("'Failure to reasonably accommodate' is an alternative theory of liability" that "would be entirely redundant if it required proof that the defendants' actions were motivated by animus toward the handicapped."). Here, Ramon alleges intentional discrimination and a failure to accommodate.

Defendants argue that Ramon's claim for intentional discrimination fails because the complaint fails to adequately plead that the HACC discriminated against Ramon because of his disability. [39] at 13. This Court agrees. The

9

complaint alleges that the HACC discriminated against Plaintiffs because Adana previously sued the Elgin Housing Authority, not because Shorter and Ramon have disabilities. *See* [34] at 8 ("The Housing Authority of Cook County had issues with me ever since I filed charges against The Housing Authority of Elgin and several of their employees, This Was Pay Back for Being a Whistleblower."); *id.* at 9 (alleging that Grimes upheld Hodges' denial of a three-bedroom voucher in support of "whatever vendetta Ms. Hodges has against me"); *id.* (alleging that Duncan intentionally sent the letter to the wrong address because he has some connection to an employee at the Elgin Housing Authority). Plaintiffs point to two other families who did not have to move to smaller apartments, *id.*, but again, Plaintiffs allege only that the HACC discriminated against them because Adana's previous lawsuits upset the HACC and its employees, *see generally* [34]. Thus, this Court dismisses Ramon's § 504 claim for intentional discrimination.

Defendants next argue that Ramon's claim for failure to accommodate cannot proceed because Plaintiffs admit that Ramon received a reasonable accommodation. This Court agrees. According to the first amended complaint, Plaintiffs live in a two-bedroom unit where Ramon has his own bedroom, [34] at 8, exactly the accommodation that his physician said he needed, [1] at 22–23. Plaintiffs also admit that Ramon has been "phenomenal" since moving to their two-bedroom unit in August 2017. [34] at 8. Because the complaint indicates that the HACC gave Ramon the precise accommodation that Adana requested for him, this Court dismisses Ramon's failure-to-accommodate claim.

### B. Retaliation

Plaintiffs allege that the HACC downsized them from a three-bedroom voucher to a two-bedroom voucher in retaliation for Adana's previous lawsuit against the Elgin Housing Authority. [34] at 8. Defendants argue that this claim fails because, among other reasons, Plaintiffs fail to plead any causal connection between the lawsuit and the voucher change. [43] at 7.

To state a retaliation claim under the Rehabilitation Act, Plaintiffs must allege that: (1) they engaged in statutorily protected activity; (2) the HACC took an adverse action against them; and (3) a causal connection exists between the protected activity and the adverse action. *See Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006). Even assuming Plaintiffs satisfy the first two elements, their retaliation claims fail because they do not sufficiently allege any causal connection between Adana suing the Elgin Housing Authority and the HACC downsizing Plaintiffs' housing voucher. Plaintiffs allege that the events might be related because Duncan, the HACC employee who sent Plaintiffs' letter to the wrong unit in their apartment building, has the same last name as someone who worked for the Elgin Housing Authority. [34] at 9. But Plaintiffs fail to allege any other connection between the organizations. By itself, the fact that Duncan shares a fairly common last name with an employee of the Elgin Housing Authority shows nothing more than a "sheer possibility" that the HACC retaliated against Plaintiffs, and thus fails to satisfy Rule 8. *See Williamson*, 714 F.3d at 436. Accordingly, this Court dismisses Plaintiffs' retaliation claim.

**C. § 1983 Claim**

Plaintiffs assert a claim against Duncan[5] under 42 U.S.C. § 1983, alleging that he deprived them of procedural due-process rights by "maliciously" addressing his letter to the wrong address so that Plaintiffs would not learn of their right to appeal the HACC's decision in time to actually do so. [34] at 9. Defendants first argue that this claim fails because the Fair Housing Act (FHA), 42 U.S.C. § 3601, *et seq.*, provides a comprehensive remedial scheme for such alleged violations in the housing context and thus precludes Plaintiffs' § 1983 claim. [39] at 16 (citing *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 435 U.S. 1 (1981)). In *Middlesex*, the Supreme Court explained that a "sufficiently comprehensive" remedial scheme in a statute "may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." 435 U.S. at 20. This Court agrees that the FHA likely precludes any § 1983 claim here. But given Plaintiffs' pro se status, this Court reaches the substance of their claim, and the result remains the same.

On the merits, Defendants argue that Plaintiffs' § 1983 claim fails because Plaintiffs do not have a property interest in a specific type of voucher-funded housing. [43] at 9. Plaintiffs have a protected property interest, however, in continuing to receive government benefits, including housing vouchers. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Before being deprived of such a benefit, people generally have the right to "some form of a hearing." *Id.* at 333; *see also Hudson v. City of Chicago*, 374 F.3d 554, 559–60 (7th Cir. 2004). But

---

[5] During the June 14, 2018 motion hearing, Adana clarified in open court that Plaintiffs' § 1983 claim alleges wrongdoing only by Duncan, not any other Defendants.

12

"individuals rejected from a specific housing unit"—as opposed to completely removed from a housing program—have "no legitimate claim" to a due-process hearing because they have no entitlement to that *specific* housing unit. *Fincher v. S. Bend Heritage Found.*, 606 F.3d 331, 334 (7th Cir. 2010).

Plaintiffs do not allege that they were altogether denied housing or excluded from the HACC's voucher program. Instead, Plaintiffs allege that the HACC excluded them from a specific type of housing unit—a three-bedroom apartment. *See generally* [34]. Plaintiffs have an entitlement to continue receiving housing vouchers from the HACC, but they do not have an entitlement to a three-bedroom apartment. *See Fincher*, 606 F.3d at 334. Thus, this Court dismisses Plaintiffs' § 1983 claim.

## IV. Conclusion

This Court grants Defendants' motion to dismiss [38] and dismisses the current complaint without prejudice. This Court recruits Eric J. Parker of Stotis & Baird; 200 W. Jackson Blvd., Suite 1050, Chicago, IL 60606; (312) 461-1000; eparker@stotis-baird.com, to represent Plaintiffs. The case is set for a status hearing on 9/4/18 at 9:45 a.m. in Courtroom 1203. Counsel shall enter an appearance on behalf of Plaintiffs by 8/9/18.

Dated: July 19, 2018

Entered:

John Robert Blakey
United States District Judge